SYLVESTER CAHILL et al., Appellants, *v.* COURTLANDT PALMER et al., Respondents.

A deed of certain real estate was given in 1760, the grantee, under it, dying in 1790, and leaving an heir proved to be in possession in 1806, claiming as heir, and who continued in possession until 1828. — *Held*, that, in 1867, the deed might be read in evidence, by such heir's grantee in possession, as an ancient deed, without proof of its execution.

Previous to the Revised Statutes, in order to establish a title founded upon adverse possession as against one holding the paper title, such possession must have been continued for twenty-five years; but proof of the

possession of a cultivated farm in 1806, by one claiming as heir of one who died in 1790, which possession continued until in 1828; will authorize a presumption that such possession continued from 1790 to 1828.

Where the possession is actual, exclusive, open and notorious, under a claim of title adverse to any and all others for the time prescribed by statute, such possession establishes a title. To uphold it, a grant from the true owner to such party may be presumed.

(Argued April 24th ; decided May 23d, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, first judicial district, affirming the judgment in favor of the defendants.

This was an action to recover money awarded by the commissioners of the Central park extension, to the defendant, Palmer, for land taken for that extension. The amount awarded was $76,040. The plaintiffs claim five undivided eighths, in fee simple, of the land for which the award was made. The money having been awarded to Palmer, the plaintiffs brought suit against the mayor, etc., of New York and Palmer, to compel the payment to be made to plaintiffs if not made; and to recover it from Palmer, if he should have received it. The jury were directed to find a verdict for defendants. Palmer claimed to have been the owner of the property taken by the commissioners, and that he and his grantors had been in the actual possession of the premises for more than fifty years. The original grantor was one Kortright, in 1760, to one Sarah Nutter, who died in 1790, leaving son, Valentine, who was shown in possession in 1806, claiming by descent from his mother, and remained in possession up to 1828. The premises were shown in a state of cultivation in 1806. There was no direct proof of possession by Sarah Nutter, though the deed to her recites that she was then in possession. In 1828, the son, Nutter, conveyed the property in question to a canal company, who gave a mortgage, which was foreclosed, one Watt becoming the purchaser. Palmer obtained title through several intermediate grants, in 1860. No adverse claim had ever been asserted until the present action. The plaintiff's claim

of title is based on a deed from one Cosse, who based his title upon a grant made by William Keift, the Dutch governor, dated May 9th, 1647, granting to one Johannes La Montange a piece of land claimed to embrace the property in question. Cosse claimed that he was one of the descendants of the original grantee, and that John Montange was another, and that he had acquired the interest of Montange by a deed dated May 21st, 1851.

*A. R. Dyett*, for the appellants. The plaintiffs can recover the money, notwithstanding the award of the commissioners. (Davies' Laws, 526; *Collins* v. *Mathewson*, N. Y. Gen. Term, 1866.) On the question of adverse possession, see *Doe* v. *Campbell* (10 John., 475); *Jackson* v. *Moore* (13 John., 513); *Simpson* v. *Downing* (23 Wend., 316); *Russell* v. *Wickham* (36 Barb., at page 369); *Jackson* v. *Frost* (5 Cow., 346); *Jackson* v. *Woodruff* (1 Cow., 286); *Laverty* v. *Moore* (33 N. Y., 658). The plaintiffs claim, under a grant from the State; forty years' adverse possession must be shown. (Code, §§ 75, 76; *People* v. *Arnold*, 4 Comst., 508; 8 Wend., 183; 17 Wend., 312; 2 John. Cas., 283.) Actual seizin continues, although the land is left vacant. (*Fosgate* v. *Herkimer M. Co.*, 9 Barb., 287; 4 Mass., 416; *Rossell* v. *Wickham*, 36 Barb., 390.) Adverse possession does not enter into this case. (*Jackson* v. *Dumont*, 9 John., 55; 21 Wend., 90; *Livingston* v. *Proseus*, 2 Hill, 526; 17 Barb., 663; 7 Wend., 53; 13 John., 466; *Crary* v. *Goodman*, 22 N. Y., 170; *Fish* v. *Fish*, 39 Barb., 513; 33 N. Y., 658.)

*John E. Burrill*, for the respondents. On the question of descent under the Dutch law, 4 Kent's Com., 381, 399; Vanderlinden's Laws of Holland, 157; Vanderlewen, Roman Dutch Law, 30, 207, 227. On the question of Nutter's possession, *Smith* v. *Lorillard* (10 Johns., 347); *Stocker* v. *Barney* (1 Lord Raym., 741); *Dunn* v. *Barnard* (Cowp., 595); Adams on Ejectment, 77, 78; *Fosgate* v. *Herkimer Co.* (9 Barb., 287). The plaintiffs should have requested

that the case be submitted to the jury, and not having done so, are estopped. (*Downs* v. *Rush*, 28 Barb., 157; *Plumb* v. *Catt. Mut. Ins. Co.*, 18 N. Y., 392, 558; *Graser* v. *Stillwager*, 25 N. Y., 318; *Brown* v. *Bowen*, 30 N. Y., 536; *Story* v. *Brennman*, 15 N. Y., 524.)

GROVER, J. The plaintiff claims in this action to recover a portion of the money paid by the city to the respondent, as a compensation for lands taken by the city for the Central park. These lands were taken under the act of 1859, chap. 101, and of 1853, chap. 616. These acts make the act providing for the taking of land for streets by the city, applicable to lands taken for the park, in respect to the right of recovery, by the true owner of land taken, of money which has been awarded and paid to another for such land. The latter act (§ 184 Davies Laws of New York), relative to the city, 538, provides that in all, each and every case when any sum or sums or compensation so to be reported by the said commissioners in favor of any person, etc., whether named or not named in the said report, shall be paid to any person or persons or party or parties whomsoever, when the same shall of right belong and ought to have been paid to some other person or persons or party or parties, it shall be lawful for the person, etc., to whom the same ought to have been paid, to sue for and recover the same with lawful interest and costs of suit, as so much money had and received to his use, by the person or persons, etc., respectively, to whom the same shall have been so paid. It follows that if the respondent, to whom the money was awarded and paid as compensation for the land, was not the owner thereof, but the appellant was such owner of the whole or any part thereof, he can maintain this action for the recovery of such portion of the money as his interest in the land entitled him to receive, notwithstanding the award of the commissioners giving it to the respondent. The question, therefore, is whether the appellant showed title to the whole or any portion of the land for which the money was awarded and paid to the respondent.

I shall assume, in the consideration of this question, that the lands in question were shown to have been included in the patent given by William Kieft, Director General of the New Netherlands, in May, 1747, to Johannes Montange, and that the latter there acquired a valid title thereto under the patent, although the question is involved in much uncertainty from the defective description, other than that the lands conveyed were occupied by Hendrick Foreest, deceased. From the great lapse of time, no aid in locating the lands could be derived from this clause, as all trace of any occupancy of Foreest has long since been lost. I shall further assume that there was evidence to show that James A. Cosse, who gave a conveyance of the land, together with other land in 1862, to the plaintiff, and his grantor, John Montange, was a descendant of the patentee sufficient to require the submission of the question to the jury. Assuming that the jury would have found in favor of the plaintiff upon these questions, as we must, as the judge refused to submit them to the jury, it follows that the plaintiff showed a right to some part of the land as the grantor of two of the heirs of the patentee, and therefore a *prima facie* right to recover some portion of the money paid by the city to the defendant therefor. This brings us to the question whether the defendant showed title in fee to the land in himself. The case contains no evidence as to any occupancy of the land or in any way affecting the title until the year 1760, when a deed claimed to include the premises was given by Lawrence Kortwright to Sarah Nutter. This deed recites that Sarah Nutter was then in possession, and that Kortwright had lately been in possession of the land. This deed was excepted to as evidence by the plaintiff, but was received without proof of its execution as an ancient deed. No direct proof was given of an actual possession by Sarah Nutter, but it was proved that she died about the year 1790, leaving her son, Valentine Nutter, her only heir, and that Valentine Nutter was in possession of the land, cultivating it as a farm, having surrounded it with a substantial fence, residing thereon, claiming

to own it as heir of his mother under this deed from Kort-wright as far back as 1806, which was as far back as the memory of witnesses residing in the neighborhood extended; but from the testimony of the situation of the farm improve-ments thereon in 1806, it was rendered highly probable that it had been occupied for a long time before, and cultivated as a farm probably by Valentine Nutter from the death of his mother in 1790, and by her previous to her death, after the deed from Kortwright to her.  This proof of possession under the Kortwright deed was sufficient to authorize its being read in evidence without proof of its execution.  The plaintiff proved by a surveyor that he could not locate the lands described in the deed from the description upon the lands in question.  This may well be true, and yet not at all tend to show that such lands were not embraced therein.  The witness could not avail himself of that important part of the description, which states that the land had lately been in possession of Kortwright, and was then in pos-session of Sarah Nutter, the grantee.  What particular land they were in possession of nearly a century before the trial could not be proved, nor could it be known to the sur-veyor.  The facts that Valentine Nutter, sixty years before the trial, was in the undisputed possession of the land, claim-ing to own the same by descent from his mother, under this deed; that such possession and claim were unchallenged by any adverse claimant, and that, from the facts proved, it was probable that possession had been held under the deed from the time it was given, when the facts were known, were stronger evidence that the land so possessed and claimed was included in the deed, than was the inability of the surveyor so to locate as to include the land after the lapse of nearly a century, that it was not so included.  The testimony proved beyond question that Valentine Nutter was in the exclusive possession, claiming to be the absolute owner by descent from his mother, founding his title upon this deed of the farm, embracing this land, from 1806 down to 1828, when he conveyed a piece of the farm, embracing the land in ques-

tion, to the Harlem Canal Company, receiving back a pur-
chase-money mortgage, which was afterward foreclosed in
equity, and the land sold upon the decree and purchased by
Watt, to whom it was conveyed by the master; and that the
defendant, through several conveyances, acquired this title in
May, 1860. It thus appears that if title was shown in Valen-
tine Nutter, the defendant was the owner of the land, and
entitled to the money received by him. But the adverse
possession of Nutter was before the Revised Statutes were
enacted. At that time to establish a title founded upon
adverse possession, as against one holding the paper title,
such possession must have been continued for twenty-five
years. (*McCormick* v. *Barnum*, 10 Wend., 104; *Simpson*
v. *Downing*, 23 id., 316.) In the present case the direct evi-
dence of possession by Valentine Nutter of the land in ques-
tion was only from 1806 to 1828, a period of only twenty-two
years. This would not establish title against those having the
paper title, although the land has been claimed ever since
1828 by those deriving title from Nutter, through deeds;
yet there does not appear to have been any actual possession
by those holding this title. This time cannot be added
cumulatively to the possession of Nutter to complete the
twenty-five years. But we have seen that there was strong
circumstantial evidence tending to show that the possession
of Nutter, under an exclusive claim of title, founded upon
the Kortwright deed, commenced long anterior to 1806, and
reached back to 1790, the time of the death of his mother.
The judge was right in giving effect to this circumstantial
evidence after so great a lapse of time, and holding that an
adverse possession in Nutter for more than twenty-five years
was shown. The counsel for the appellant insists that an
adverse possession, although for the length of time required
by statute to bar the true owner, is available only as defence
to a suit brought by such owner for the recovery of the land.
In this the counsel is in error. When the possession is actual,
exclusive, open and notorious, under a claim of title adverse
to any and all other for the time prescribed by statute, such

possession establishes a title. To uphold it, a grant from the true owner to such party may be presumed. (Washburn on Real Property, vol. 3, 135 to 142 inclusive, and cases cited; *Stevens* v. *Tuft*, 11 Gray, 35.) In the present case such presumption was peculiarly appropriate. The land was a valuable farm. It was inclosed and occupied as such probably for nearly a century, under a claim of title adverse to that of the Montange heirs. They interposed no claim whatever. The presumption is, that their title had been acquired by those in possession claiming the title. There was never any abandonment of this title. Although there has not been an actual occupancy by those holding the title, yet there has been a constant claim of title, under a regular chain of deeds from Nutter, to the time the land was taken by the city. The judge was therefore right in directing a verdict for the defendant, upon the ground, that he had shown a good title to the land, and the judgment of the General Term, affirming the judgment rendered upon the verdict, must be affirmed, with costs.

All concurring, judgment affirmed.