## LITTLE *v.* LIBBY.

To constitute a disseisin, the possession of the disseisor must have been *adverse to the title of the true owner*, as well as open, notorious, and exclusive.

The parol declarations of a person in possession of land, are admissible to shew the character and intent of such possession, notwithstanding the statute of frauds.

This was an action of trespass *quare clausum fregit*, and was tried upon the general issue. The *locus in quo* contained thirty-five acres, as to a small part of which the defendant pleaded that it was his own soil and freehold, but no question of law arose upon this part of the case. The whole lot, of which the *locus in quo* was a part, contained originally one hundred and thirty-five acres.

The plaintiff proved the act alleged as a trespass; and that the whole lot, in the year 1780 was regularly conveyed to *Moses Little*, whose son and heir he was;—that the father made his will, which was duly approved *June* 4, 1798 whereby he devised this lot, with other lands, to the plaintiff.

Little v. Libby.

The defendant proved that about thirty-seven years ago he caused the whole lot to be run out, and the lines and corners marked;—that about a year after, he made a fence round the lot, and removed his family upon it;—that he had dwelt there ever since, and had kept up and repaired the surrounding fences in the same manner as farmers generally do;—cultivating and improving a part, and claiming the whole.

To rebut this testimony, the plaintiff proved that in the year 1804 the defendant tendered to him the sum at which the whole lot had been appraised by commissioners, appointed for that purpose, among others, by the Commonwealth;—that in *October* 1809 the defendant purchased of the plaintiff one hundred acres of the lot, including that end on which he dwelt and had made his principal improvements;—that he received a deed of it, and had it surveyed by two successive surveyors, to his entire satisfaction. The plaintiff also proved by a witness that they both went to the defendant's house in 1808, being then on the business of examining the plaintiff's lands generally, in that town;—that on this occasion the defendant expressed his wish to purchase of the plaintiff the 100 acres above mentioned;—that the defendant a short time after, on several occasions, said that he wished to purchase the *residue* of the lot;—that six or seven years ago he repeated the wish;—that three years ago he said he did not own the land;—that on another occasion the witness, who was agent for the plaintiff, called on the defendant for rent, which he did not then *agree* to pay, but said it would do no harm to the plaintiff for *him*, the defendant, to improve the land;—that about eighteen months since, the witness told the defendant that he had heard he intended to hold the land by possession, which the defendant distinctly disavowed, declaring that he had no such intention;—and that in 1808 and 1816 the defendant made similar declarations of his wish to purchase the land in dispute in this action, as soon as he should be able so to do.

Upon this evidence the Judge who presided at the trial instructed the jury that the proof offered by the defendant seemed to establish the defence, by exhibiting those facts which have been considered as satisfactory evidence of a disseisin, if not controled or explained by other testimony; and that, of

course, it was necessary for them to inquire and decide whether the facts proved on the part of the plaintiff, did disprove or control the evidence exhibited on the other side.

He then informed them that to constitute a disseisin, the possession of the occupant must be *notorious, exclusive, and adverse to the title of the true owner ;*—that the *intention* of the possession therefore was a subject of inquiry ;—that if the possessor of land hold under the true owner, or in submission to his title, it would not be a disseisin ;—that they must decide, from the facts proved, whether the defendant thus held possession adverse to the title of the plaintiff, or of *Moses Little,* or otherwise ; and that they might gather his intention from all his conduct and declarations which had been proved ;—that as he had purchased the 100 acres, and had repeatedly expressed his wish to purchase the 35 acres now in dispute, and disavowed all intention to hold or claim the lands by possession, they were at liberty from these facts to draw their own conclusions as to his intention in entering upon and occupying the lands in question ;—that if they should believe that *Moses Little* was disseised at the time of making his will, then nothing passed to the plaintiff by the will, but as son and heir he took the land by descent ; and if he had entered into the land so descended, and become legally possessed of it, then he might maintain this action ;—that if at the time the plaintiff went to the dedefendant's house in 1808, the defendant had held the land by disseisin for twenty years next preceding, then he had a right to keep the plaintiff out, and to forbid his entry into and possession of the land ; but that the defendant might, if he were inclined, give up the possession, and permit the plaintiff to enter and become possessed ;—and that if they should be satisfied, from all the facts, that the defendant had admitted the right and title of the plaintiff, and voluntarily yielded up any possessory title of his own, then the possession of the plaintiff was sufficient to maintain this action.

Under these instructions the jury returned a verdict for the plaintiff ; and the foreman, being interrogated by the Judge, said that the jury were of opinion that neither the testator nor the plaintiff had been disseised by the defendant. The questions of law arising upon the facts in this case as reported by

the Judge, were reserved, at the request of the defendant, for the consideration of the whole Court.

*Orr* and *Fessenden*, for the defendant, now contended that, upon the facts reported, the verdict ought to have been for the defendant. 1. There was no entry of the testator or of the plaintiff within twenty years after the *first* entry of the defendant; and so the plaintiff's right of entry was gone, and he was driven to his possessory action. The parol evidence of the defendant's declarations was inadmissible, as tending to defeat a title acquired to lands, and therefore contrary to the statute of frauds. It was enough that the defendant had the open and visible possession more than twenty years, which gave him *an interest* in the lands,—no matter whether defeasible or not,—and which could not be controled or defeated by mere parol. The tender in 1804 could have no effect, being at best but an offer of compromise. *Jackson v. Cary,* 16 *Johns.* 302. *Atkyns v. Hörde,* 1 *Burr.* 119. *Fisher v. Prosser, Cowp.* 217. *Shaw v. Barber, Cro. El.* 830.—2. Nothing passed to the plaintiff by the devise, so as to enable him to maintain an action without entry; the ancestor not being seised. *Wells v. Prince,* 4 *Mass.* 64—67. Had the testator or the plaintiff conveyed the land to a stranger, the grantee must have brought a writ of entry in the name of his grantor.—3. If the defendant did not hold adverse to the plaintiff, he must be considered as his tenant at will;—in which case trespass will not lie till after half a year's notice to quit. A tenancy at will is to be treated as a tenancy from year to year; and the strongest case for the plaintiff which can be made out from the evidence is, that the defendant was in possession by his consent. *Flower v. Darby,* 1 *D. & E.* 159. 2 *Bl. Com.* 146—7. *Clayton v. Blakey,* 8 *D. & E.* 3. *Ward v. Willingale,* 1 *H. Bl.* 311. If any action would lie against the defendant, without notice, the remedy should have been in case, and not in trespass.—4. The deed of 100 acres does not estop the defendant from claiming title by possession to the residue of the lot. If one take a lease of his own land, he is estopped only during the term. *Co. Lit.* 47. *b.*—As to the finding of the jury that the defendant's possession of the land did not amount to a disseisin of the plaintiff,—this, they contended, was not

Little *v.* Libby.

within their province to determine. Disseisin is a legal result from certain facts, and the jury should have been instructed by the Court whether the facts proved constituted a disseisin or not. It was wholly a question of law.

*Longfellow,* for the plaintiff, said that the rule of the cases cited upon the statute of frauds was, that the verbal declarations of a person having an interest in lands cannot be received to transfer that interest to another. It was never held that the declarations of a party in possession could not be received to shew the character of his occupancy. The jury were rightly instructed that to constitute a disseisin the possession must be *adverse,* as well as open and visible; and the principal question before them was, whether the possession of the defendant was of that description or not. The defendant himself best knew his own motives and intentions, and the relation in which he stood to the owner of the land; and his own declarations afforded the best possible explanation of his acts, which might or might not constitute a disseisin, according as he intended them at the time.

If then, the possession of the defendant was not adverse, the ancestor was seised at the time of making his will, and no entry by the devisee was necessary; the possession, in law, following the right, which descended to the plaintiff. But he did in fact enter in 1804, and also in 1808 when he conveyed the 100 acres.

The possession of the defendant was not a tenancy at will; but was rather a possession as servant of the plaintiff, or at most, a holding by sufferance. *Co. Lit.* 57. *a.* But if a tenant at will, he was not entitled to notice to quit, for such is not the common law either of England or this country. It depends wholly on statute. And if it were otherwise, yet here he is a trespasser for *cutting trees,* which is the act alleged in the writ and found by the jury. 3 *Cruise's Digest,* 554. 9 *Rep.* 106. *a.* 5 *Cruise's Digest,* 321. *Smith v. Burtis,* 6 *Johns.* 197. *Commonwealth v. Dudley,* 10 *Mass.* 403. *Propr's Ken. Purchase v. Springer,* 4 *Mass.* 416. *Boston Mill Corp. v. Bulfinch,* 6 *Mass.* 229.

Little *v.* Libby.

Mellen C. J. delivered the opinion of the Court.

The facts in this case present the defendant as having been for a long period in possession of the plaintiff's land; but at the same time as having for many years past disclaimed all pretence of title or claim to it; and expressly disavowing any intention of considering his possession as adverse to the rights of the plaintiff.—In such circumstances, nothing but an *unbending* principle of law ought to defeat the present action, and turn him round to another remedy; yet if such a principle, though purely of technical law, should be found applicable to the case, it must of course have its operation.—We will examine and see if such be the fact.

It is not necessary to give any other definition of disseisin than was given to the jury. To constitute a disseisin, the person claiming to have gained a title by disseisin must prove that his possession must not only have continued a sufficient length of time, but must also have been *open, notorious, exclusive* and *adverse.*—The evidence upon this point having been all laid before the jury, they have decided that neither *Moses Little* nor *the plaintiff* was ever *disseised* of the land in question. This fact being thus settled, the next inquiry is, whether there is any legal objection against maintaining the present action. In the case of *Wells v. Prince,* 4 *Mass.* 64. it was decided that, upon the death of a devisor, dying seised, the devisee becomes seised without an actual entry, where the lands are vacant and *without an occupant,* or in possession of a stranger under or *acknowledging the title of the devisee.* There are numerous facts in this case shewing the *acknowledgment* of the plaintiff's title by the defendant; and therefore an entry by the plaintiff in form, before commencing the action was unnecessary, as he was seised before such entry under the devise in his father's will. But even if this point admitted of any doubt, there was proof submitted to the consideration of the jury tending to shew that the defendant had yielded up to the plaintiff all possessory title, if he had any; and part of the instruction of the Judge to the jury was, that if they believed such proof, it might furnish evidence of what was in law an actual entry; and on that ground they might find for the plaintiff. Their verdict shews they *did* believe the evidence and find the fact. The plaintiff

therefore, being seised of the lands, and the acts of the defend-
ant not amounting to a *disseisin*, they must be considered as no
more than successive *acts of trespass* committed on the plaintiff's
land. Such is the principle even where there *has been* a dis-
seisin, which has afterwards been purged by an entry. Thus
if *A.* six years ago disseised *B.*, *B.* may recover in an action
of trespass for the first wrongful act which constituted the com-
mencement of the disseisin ; but *during* its continuance *B.* can
maintain no such action for *A's* intermediate acts. But *B.* may
*enter* and put an end to the disseisin ; and may then maintain
an action of trespass and recover of *A.* damages for all those
intermediate wrongful acts ; the entry of *B.* in such case
having a *retrospective* operation, and giving *B.* the same rights
during the whole period, as though he had not been disseised.
In the case before us, the testator was never disseised ;—and
the plaintiff was never disseised ; therefore no special entry
was necessary to give the right of action.

But it has been urged that from the facts reported the Court
must consider *Libby* as the tenant at will of the plaintiff; and
therefore, as no notice to quit was given, an action of trespass
will not lie against him. The relation of landlord and tenant
is always created *by contract*, either express or *implied*. It
cannot exist without such contract.—What is the evidence of
such contract and tenancy in the present case? On a certain
occasion—the time not particularly mentioned—the defendant
was called on by the plaintiff's attorney to pay some rent for
the use of the land. The defendant *made no agreement* to pay
any ; but said it would do no injury to the plaintiff for him
(the defendant) to improve the land ; and we hear of no re-
ply or assent to this observation. On another occasion, he
denied that he did *improve* it ; which might be consistent with
his occasionally depasturing it.—Here, then, is no *express* con-
tract for the tenancy supposed.—From what facts then is the
contract to be *implied?* A year and a half since, the plaintiff's
attorney and the defendant are found conversing about the
character of the defendant's possession ; and he distinctly dis-
avowing the intention, which had been imputed to him, of in-
tending to *hold the lands by possession.*—Does this conversation
recognize any such relation as is supposed? Does it not clearly

shew that neither party had any such idea ? Does not the plea of *soil and freehold*, which the defendant has filed, shew that he claimed *at last* to hold the land by his possession, notwithstanding his repeated declarations to the contrary and propositions to purchase ?—The case furnishes nothing but some uncertain and ambiguous facts relating to this point, from which the defendant's counsel have *inferred* the relation of *landlord* and *tenant*. But the present defence is not of such a character as to claim from the Court any solicitude to draw conclusions *against* the support of the action from *doubtful circumstances ;* and infer a tenancy to *defeat* it, from acts and expressions which may, with perfect consistency, receive a different construction.

On the whole, we perceive no reason for sustaining the motion for a new trial; and there must be

*Judgment on the verdict.*